1
2
3
4
5

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

6  PAULA WHITE-HARRIS,                        )
                                             )
7             Plaintiff,                      )      Case No. 2:15-cv-01340-JAD-NJK
                                             )
8  vs.                                        )      REPORT AND
                                             )      RECOMMENDATION
9  CAROLYN W. COLVIN,                         )
   COMMISSIONER OF SOCIAL SECURITY,           )      (Docket Nos. 19, 26)
10                                            )
              Defendant.                      )
11 _____)

12

13       This case involves judicial review of administrative action by the Commissioner of Social

14  Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and

15  supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C.

16  Ch. 7.  Currently pending before the Court is Plaintiff's Motion for Summary Judgment.  Docket

    No. 19.  Also pending before the Court is Plaintiff's memorandum supporting her motion.

17  Docket No. 20.[1]  Plaintiff requests that the Court reverse the Administrative Law Judge's

18  decision or, in the alternative, remand the case to the Administrative Law Judge for further

19  proceedings.  Docket No. 20 at 22.  The Commissioner filed a response to Plaintiff's motion and

20  a cross-motion.  Docket Nos. 25, 26.  Plaintiff filed a response to the Commissioner's cross-

21  motion.  Docket No. 27.  This action was referred to the undersigned magistrate judge for a

22  report of findings and recommendation.

23  **I.    STANDARDS**

24       A.    Judicial Standard of Review

25       42 U.S.C. § 405(g) governs the Court's review of administrative decisions in social

26

27  _____

28       [1]In violation of the Court's Local Rules, Plaintiff filed a separate motion and
    memorandum in support of her motion.  Docket Nos. 19 and 20.

1   security disability benefits cases.  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

2   Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of

3   Social Security made after a hearing to which he was a party, irrespective of the amount in

4   controversy, may obtain a review of such decision by a civil action . . . brought in the district

5   court of the United States for the judicial district in which the plaintiff resides."  The Court may

6   enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or

7   reversing the decision of the Commissioner of Social Security, with or without remanding the

8   cause for a rehearing."  *Id.*

9        The Commissioner's findings of fact are deemed conclusive if supported by substantial

10  evidence.  *Id.*  To that end, the Court must uphold the Commissioner's decision denying benefits

11  if the Commissioner applied the proper legal standard and substantial evidence in the record as a

12  whole supports the decision.  *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

13  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a

14  preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

15  support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In determining

16  whether substantial evidence supports the Commissioner's findings, the Court reviews the

17  administrative record as a whole, weighing both the evidence that supports and the evidence that

18  detracts from the Commissioner's conclusion.  *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 720

19  (9th Cir. 1998).

20       Under the substantial evidence test, a court must uphold the Commissioner's findings if

21  they are supported by inferences reasonably drawn from the record.  *Batson v. Comm'r, Soc. Sec.*

22  *Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2003).  When the evidence supports more than one

23  rational interpretation, the Court must defer to the Commissioner's interpretation.  *Burch v.*

24  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Consequently, the issue before this Court is not

25  whether the Commissioner could reasonably have reached a different conclusion, but whether

26  substantial evidence supports the final decision.

27       It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so

28  that the Court does not speculate as to the basis of the findings when determining if substantial

evidence supports the Commissioner's decision.  The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.  *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.    Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of his claim for disability.  *See, e.g.*, 20 C.F.R. § 404.1514.  If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b).  If the individual is currently engaging in SGA, then a finding of not disabled is made.  If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from

performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.[2]  If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made.  20 C.F.R. §§ 404.1520(h), 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p.  In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p.  To the extent that objective medical evidence does not substantiate

---

[2] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  *Bray*, 554 F.3d at 1224.

statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.  BACKGROUND

### A.  Procedural History

On August 22 and September 28, 2011, Plaintiff filed applications for disability insurance benefits and supplemental social security income.  *See, e.g.*, Administrative Record ("A.R.") 199-211.  Plaintiff's application for disability insurance benefits alleged a disability onset date of October 1, 2009, while her application for supplemental social security income alleged a

disability onset date of January 1, 2009.  A.R. 199, 201.  Plaintiff's claims were initially denied

on February 6, 2012, and upon reconsideration on January 7, 2013.  A.R. 149-52, 156-62.  On

January 16, 2013, Plaintiff filed a request for a hearing before an ALJ.  A.R. 163-64.  On October

7, 2013, Plaintiff, Plaintiff's attorney, and a vocational expert appeared for a hearing before ALJ

Barry H. Jenkins.  *See* A.R. 694-760.[3]  On November 15, 2013, the ALJ issued an unfavorable

decision finding that Plaintiff has not been under a disability, as defined by the Social Security

Act, from the alleged onset date through the date of his decision.  A.R. 19-30.  The ALJ's

decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's

request for review on May 19, 2015.  A.R. 1-4.

On June 15, 2015, Plaintiff commenced this action for judicial review pursuant to 42

U.S.C. § 405(g).  *See* Docket No. 1.

B.      The Decision Below

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§

404.1520 and 416.920, and issued an unfavorable decision on November 15, 2013.  A.R. 19-30.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social

Security Act through December 31, 2013.  A.R. 21.  At step two, the ALJ found that Plaintiff has

the following severe impairments: disorders of the back and right ankle, morbid obesity, anxiety,

and depression.  A.R. 21-22.  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meet or medically equal the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 22-24.  The ALJ

found that Plaintiff's other medically determinable physical and mental impairments are non-

severe.  *Id.*

The ALJ found that Plaintiff has the RFC to perform less than the full range of light work

as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  A.R. 24-29.  At step four, the ALJ found

that Plaintiff is unable to perform any PRW as a medical assistant, mobile phlebotomist, security

---

[3]At Plaintiff's hearing, her attorney clarified that the alleged onset date is October 1, 2009.  A.R. 699.

guard, orderly, substance abuse counselor, or "stocker." A.R. 29. At step five, the ALJ found

that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant

numbers in the national economy that Plaintiff can perform. A.R. 29-30. Based on all of these

findings, the ALJ found Plaintiff not disabled and denied her applications for a period of

disability and disability insurance benefits and supplemental social security income. A.R. 30.

## III.   ANALYSIS AND FINDINGS

Plaintiff makes four arguments in favor of reversal and/or remand of the ALJ's decision.

*See* Docket No. 20.[4] First, Plaintiff argues that the ALJ's negative credibility findings regarding

her testimony and that of her husband are unsupported by substantial evidence. *Id.* at 9-16.

Second, Plaintiff argues that the ALJ erroneously failed to assign controlling, or at least

significant, weight to the opinions of treating physicians Dr. Wolfson and Dr. Nwaba. *Id.* at 16-

21.[5] Third, Plaintiff argues that the ALJ erroneously determined that Plaintiff's mental

impairments do not meet or equal in severity listings 12.04, 12.06, or 12.08. *Id.* at 6-9. Fourth,

Plaintiff argues that the ALJ's determination that Plaintiff can perform other available work is

based on an improper RFC assessment. *Id.* at 21-22. The Court will address each argument in

turn.[6]

### A.   Plaintiff's Credibility

Plaintiff asserts that the ALJ's finding that her testimony was "not entirely credible,"

---

[4]For the first time in the reply brief, Plaintiff also argues that the ALJ failed to fully develop the record and to assure that Plaintiff's interests were considered. *See* Docket No. 27 at 6 (citing *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001)). Plaintiff fails to meaningfully develop this argument, however, and the Court deems it waived. *See, e.g.*, *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

[5]There appears to be some confusion about the doctor's name. The ALJ referred to him as Emmanuel Numler. A.R. 28. The index to the administrative record refers to him as both Emmanuel Numler and Emmanuel Nwapa. Plaintiff has clarified that his name is Emmanuel Nwaba. Docket No. 20 at 18.

[6]The Court will address Plaintiff's credibility arguments in two separate sections. Plaintiff's motion fails to acknowledge the fact that different standards of review apply to the two credibility determinations at issue and lumps her arguments as to both determinations into one section. *See* Docket No. 20 at 9-16.

A.R. 26, lacks the support of substantial evidence. *See* Docket No. 20 at 9-16. Plaintiff contends that the ALJ misinterpreted the available evidence and selectively focused on evidence that undermined her credibility. *See id.* The Commissioner counters that the ALJ gave valid reasons for discounting Plaintiff's credibility, supported by substantial evidence in the record. Docket No. 25 at 10-12.

The ALJ is required to engage in a two-step analysis to evaluate a claimant's credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if the individual has satisfied the first step of the test with no evidence of malingering, the ALJ may only reject the individual's testimony about the severity of the symptoms by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *See id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 26. However, the ALJ found Plaintiff's allegations of debilitating symptoms not credible because: (1) the allegations lack the support of objective medical evidence; (2) the allegations are inconsistent with the nature of the medical treatment that Plaintiff received; (3) the allegations are inconsistent with Plaintiff's daily activities; and (4) medical opinion evidence casts doubt on Plaintiff's reputation for truthfulness. A.R. 25-29. The Court finds that the ALJ did not err in making an adverse credibility finding based on these considerations.

i.    Objective Medical Evidence

The ALJ based the adverse credibility finding in part on the lack of objective medical

1    evidence supporting the allegations.  A.R. 26-27.  The record supports the ALJ's finding.  The

2    ALJ cites to instances where the objective medical evidence does not support Plaintiff's

3    allegations, including a negative small bowel biopsy, a normal abdominal CT, and a normal

4    EKG.  A.R. 26.  Further, the ALJ found that Plaintiff has not generally received the type of

5    medical treatment expected for a totally disabled individual.  A.R. 26-27.  The Commissioner

6    also cites multiple instances in which the objective medical evidence in the record does not

7    support Plaintiff's alleged limitations.  *See* Docket No. 25 at 11.   Moreover, it is proper for an

8    ALJ to consider the lack of medical evidence as part of his consideration of the entire body of

9    evidence in making the credibility determination.  *See Burch*, 400 F.3d at 681 ("Although lack of

10   medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the

11   ALJ can consider in his credibility analysis.")

12                    ii.    Nature of Medical Treatment

13          The ALJ based the adverse credibility finding in part on the conservative, non-emergency

14   nature of the medical treatment that Plaintiff received.  A.R. 26.  The record supports that

15   finding.  Additionally, the Commissioner cites multiple instances in which Plaintiff complained

16   of severe pain, but doctors made no significant findings and thus did not follow up with

17   significant treatment.  *See* Docket No. 25 at 11-12.  Moreover, it is proper for an ALJ to consider

18   the nature of a claimant's medical treatment.  *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th

19   Cir. 1995).

20          Plaintiff submits that *Johnson* is distinguishable.  The Court disagrees.  Plaintiff cites

21   *Johnson* for the proposition that the ALJ could not have required medical support to prove the

22   severity of Plaintiff's pain because she had already established an impairment.  Docket No. 27 at

23   4.  Had the ALJ relied solely on the nature of Plaintiff's treatment in finding Plaintiff not

24   credible, this argument might have benefitted Plaintiff.  On the contrary, however, the ALJ

25   considered the nature of Plaintiff's medical treatment among other factors in making a credibility

26   determination.  *See* A.R. 25-29.  Plaintiff also inaccurately asserts that *Johnson* is inapplicable

27   because the court in that case upheld the ALJ's credibility determination "[b]ecause the

28   [p]laintiff . . . persisted in testifying to recent pain rather than pain she experienced before the

1    expiration of her insurance."   Docket No. 27 at 4.   The court in *Johnson* relied on multiple

2    factors in upholding the ALJ's credibility determination.  *See Johnson*, 60 F.3d at 1433-34.  One

3    factor, relevant here, was that the plaintiff's doctor "prescribed only 'conservative treatment'"

4    during the relevant time period.  *Id.* at 1434.[7]

5                      iii.    Daily Activities

6          The ALJ based the adverse credibility finding in part on the inconsistency between

7    Plaintiff's allegations and her daily activities.  A.R. 25.  The record supports this finding.  *See,*

8    *e.g.*, A.R. 262-64, 286-89, 326-28, 486-87.  For example, as the ALJ noted in his opinion, despite

9    Plaintiff's alleged impairment, Plaintiff admitted to engaging in activities of daily living that

10   include, *inter alia*, shopping, doing household chores, writing in her journal, using the computer,

11   reading, going to church, running errands, dressing herself, bathing herself, taking care of her

12   personal hygiene, paying bills, driving, and spending time with family.  *See* A.R. 25.  The ALJ

13   reasonably concluded that these daily activities "reflect a significant functional capacity and not

14   an individual unable to sustain regular and continuing work due to medically determinable

15   impairments."  A.R. 25.  Moreover, it was permissible for the ALJ to consider this inconsistency

16   in making a determination about Plaintiff's credibility.  *See Orn*, 495 F.3d at 636, 639.

17         Plaintiff's argument regarding her daily activities focuses on the aspects of her testimony

18   that support her allegations, *see, e.g.*, Docket No. 20 at 14, but fails to fully grapple with the

19   aspects of the record that suggest a level of daily activity inconsistent with her allegations.

20   Plaintiff likens this case to *Orn*, in which the court found that "reading, watching television, and

21   coloring in coloring books are activities that are so undemanding that they cannot be said to bear

22   a meaningful relationship to the activities of the workplace."  *Orn*, 495 F.3d at 639.  As outlined

23   above, Plaintiff has admitted to far more than merely watching television and coloring.  The

24   Court finds that the ALJ did not err in considering the inconsistency between Plaintiff's daily

25   activities and her allegations, and substantial evidence supports his finding.

26

27         [7]The relevant time period was the five years between 1981 and 1986.  *Johnson*, 60 F.3d at

28   1432.  The plaintiff's doctor prescribed "'conservative treatment'" in 1986.  *Id.* at 1434.

iv.    Reputation for Truthfulness

1

2        The ALJ also based the adverse credibility finding in part on evidence of untruthfulness

3    and/or exaggeration.  A.R. 27.  Substantial evidence in the record supports this finding.

4    Specifically, on January 13, 2012, Plaintiff underwent a comprehensive psychiatric evaluation

5    with Dr. Kara Cross.[8]  Dr. Cross noted that Plaintiff made inconsistent statements, did not appear

6    to be genuine and truthful, and appeared to be exaggerating.  *See* A.R. 486-87.  The ALJ factored

7    this information into his credibility analysis.  *See* A.R. 27.  It was proper for the ALJ to consider

8    evidence regarding Plaintiff's reputation for truthfulness.  *Orn,* 495 F.3d at 636.

9        Plaintiff's argument with regard to Dr. Cross' report once again fails to grapple with

10   unfavorable portions of the record.  Dr. Cross' evaluation, which the ALJ discusses at length in

11   his opinion, discusses Plaintiff's demeanor and attitude during the evaluation.  *See* A.R. 485-90.

12   The report also identifies, for example, inconsistencies in self-reporting and a GAF score[9] that

13   undermines Plaintiff's argument about the severity of her symptoms.  A.R. 485, 487, 489.  The

14   report further reveals the use of specific psychological testing methods, the results of which

15   contradict Plaintiff's claims about attention, memory, and concentration.  A.R. 488-89.  Dr.

16   Cross' report thus lays the foundation for Dr. Cross' conclusions that Plaintiff "did not appear to

17   be a reliable historian" and "appear[ed] to be exaggerating."  A.R. 485, 487.  Although Plaintiff

18   may have preferred that the ALJ focus on other elements of the record, it was reasonable for the

19   ALJ to consider Dr. Cross' findings.

20       In sum, the Court finds that the ALJ in this case explicitly considered a variety of factors

21   in concluding that Plaintiff's testimony was not credible.  It was permissible for the ALJ to

22   consider these factors.  Substantial evidence in the record, as outlined above, supports the ALJ's

23

24   _____

25   [8]As the Court will explain below in Section III-C, it was permissible for the ALJ to place
     significant weight on Dr. Cross' testimony and less weight on treating physicians' opinions.

26
27   [9] The GAF scale has since been abandoned.  *See Wilson v. Colvin*, 72 F. Supp. 3d 1159,
     1164 n.2 (D. Ore. 2014).  At the time of these examinations, however, the GAF scale was still
     being utilized, and the score assigned Plaintiff showed mild symptoms.  *See, e.g.*, *Werle v.*
28   *Astrue*, 633 F. Supp. 2d 857, 882 n.15 (D. Ariz. 2009) (outlining various GAF scores).

1  conclusion.

2      B.      Credibility of Plaintiff's Husband

3      Plaintiff also argues that the ALJ erred in choosing not to give significant weight to

4  her husband's written statement in support of her applications.  Docket No. 20 at 15-16.  An

5  "ALJ must consider competent lay testimony but in rejecting such evidence, he need only

6  provide reasons for doing so that are 'germane to [the] witness.'"  *Carmickle v. Comm'r, Soc.*

7  *Sec.*, 533 F.3d 1155 (9th Cir. 2008) (quoting *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

8  2006)).  The ALJ in *Greger* found a lay witness' testimony not credible because it contradicted

9  objective medical evidence and because of the witness' close relationship with the claimant.  *See*

10  *Greger*, 464 F.3d at 968.

11      The ALJ in this case found Plaintiff's husband's statements "only partially credible."

12  A.R. 25.  Plaintiff submits that the ALJ "admitted to assessing [Plaintiff's] husband's credibility

13  based upon whether [the husband's] testimony is consistent with the ALJ's opinion."  Docket

14  No. 20 at 16.  The ALJ's reasoning, however, as clearly set forth in his opinion, is similar to that

15  of the ALJ in *Greger*.  Specifically, the ALJ in this case noted that the "clinical or diagnostic

16  medical evidence" in the record did not support Plaintiff's husband's statements about the

17  severity of her symptoms.  A.R. 25.  The record, as discussed above in connection with the

18  contradictions between Plaintiff's testimony and the medical evidence, supports this finding.

19  The ALJ also noted that Plaintiff's husband is her sole financial support and as a result of this

20  close relationship "has a financial interest in seeing the claimant receive benefits."  A.R. 25.  The

21  record supports the ALJ's finding of a financial interest and resultant bias.  Not only can it be

22  inferred from the record that Plaintiff's husband is her sole financial support, but Plaintiff also

23  testified that her husband was not working at the time she applied for benefits.  A.R. 700-01, 703.

24  Moreover, the ALJ's reasons are "germane" to Plaintiff's husband because they relate to his

25  personal observations, statements, relationship to Plaintiff, and financial interests.  *See Greger*,

26  464 F.3d at 972.

27      C.      Opinions of Dr. Wolfson and Dr. Nwaba

28      Plaintiff submits that the ALJ impermissibly gave examining and non-examining

physicians' opinions more weight than her treating physicians' opinions.  Docket No. 20 at 16-21.  When assigning weight and resolving conflicts in medical testimony, the Ninth Circuit distinguishes between the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; and (3) neither treating nor examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record.  *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  Even when not controlling, such opinions are entitled to deference and must be weighed properly pursuant to applicable regulations.  *See, e.g.*, *id.*  Nonetheless, the opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability.  *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  When evidence in the record contradicts the opinion of a treating physician, an ALJ may reject that opinion based on specific and legitimate reasons supported by substantial evidence.  *Bray*, 554 F.3d at 1219.

In this case, Dr. Wolfson opined that Plaintiff would be completely unable to work, would not be able to sit for more than thirty minutes at a time, would be completely unable to stand during the workday, could occasionally lift at most five pounds, and suffered extreme pain. A.R. 642.  The ALJ afforded Dr. Wolfson's opinion little weight because it was based on Plaintiff's subjective statements that he found lacked credibility, was inconsistent with Plaintiff's treatment records, and was not supported by objective clinical or diagnostic findings.  A.R. 28. Substantial evidence supports each of these findings.  *See, e.g.*, 435-45, 447, 450, 455, 461, 464-67, 471-74, 643-57.  Moreover, Ninth Circuit law makes clear that it is proper for an ALJ to consider these factors in discrediting a treating physician's opinion.  *See Bray*, 554 F.3d at 1219 (opinion brief, conclusory, and inadequately supported by clinical findings); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (reliance on the claimant's subjective statements); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (inconsistent treatment records).  The ALJ articulated specific and legitimate reasons supported by substantial evidence to discount Dr. Wolfson's opinion.

1      Dr. Nwaba opined that Plaintiff would be unable to independently, appropriately, and

2  effectively sustain an ordinary routine without special supervision and that she would have other

3  serious limitations in a work environment. *See, e.g.*, A.R. 670.  Dr. Nwaba further predicted that

4  Plaintiff would miss more than four days of work per month because of her mental impairments.

5  *See, e.g.*, A.R. 672.  The ALJ afforded Dr. Nwaba's opinion little weight for the same reasons

6  that he afforded Dr. Wolfson's opinion little weight.  A.R. 28.  Substantial evidence supports the

7  ALJ's findings.  *See, e.g.*, A.R. 620, 622-23, 626-27, 637, 639-41.  Moreover, as explained

8  above, Ninth Circuit case law makes clear that this reasoning is proper.  The ALJ articulated

9  specific and legitimate reasons supported by substantial evidence to discount Dr. Nwaba's

10  opinion.

11      In sum, the ALJ's decision to place less weight on the treating physicians' opinions was

12  proper.  Consequently, it was also permissible for the ALJ to place more weight on the

13  examining and non-examining physicians' opinions.

14      D.    Listings

15      Plaintiff submits that the ALJ erroneously determined that Plaintiff's mental impairments

16  do not meet or equal in severity listings 12.04, 12.06, or 12.08.  Docket No. 20 at 6-9.  Plaintiff

17  appears to make two distinct sub-arguments: (1) substantial evidence does not support this

18  finding; and (2) the ALJ erred by failing to consider how Plaintiff's physical impairments, in

19  addition to her mental impairments, might have added to her limitations.  *See id.*  The

20  Commissioner responds that substantial evidence supports the ALJ's findings, but does not

21  address Plaintiff's second contention.  *See* Docket No. 25 at 12-13.

22          i.    Substantial Evidence

23      Questions of credibility and resolution of conflicting evidence are the functions of the

24  ALJ.  *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*,

25  694 F.2d 639, 642 (9th Cir. 1982)).  "Where the evidence is susceptible to more than one rational

26  interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan v. Comm'r, Soc. Sec.*,

27  169 F.3d 595, 599 (9th Cir. 1999).

28      In this case, the ALJ found that Plaintiff does not meet or equal in severity certain listings

because she did not show that she has at least marked limitations in two of the functional

domains, or an extreme limitation in one domain.  A.R. 22-24.  Substantial evidence supports

this finding.  *See, e.g.*, A.R. 262-64, 286-89, 326-28, 486-87.  Moreover, as the Commissioner

notes, Plaintiff's argument relies exclusively on her own statements about the severity of her

mental impairments, which the ALJ properly discredited.  *See* Docket No. 20 at 6-7.  Notably,

Plaintiff's reply fails to respond to this argument.[10]  Given that the ALJ's credibility

determination was proper and substantial evidence supports his finding, the Court concludes that

he did not err.

ii.     Consideration of Physical Impairments

Plaintiff argues that in assessing whether her mental impairment does not equal in

severity certain listings, the ALJ impermissibly "ignored limitations that may have arisen from

Plaintiff's physical impairments."  Docket No. 20 at 8 (citing *Lester*, 81 F.3d at 830).  "[I]n

determining whether a claimant equals a listing under step three of the Secretary's disability

evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the

combined effects of the impairments."  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

The ALJ in *Marcia* concluded that the "claimant [] failed to provide evidence of medically

determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the

duration requirements of the Act."  *Id.*  The *Marcia* court noted that "Marcia presented evidence

in an effort to establish equivalence."  *Id.*  Accordingly, the Ninth Circuit remanded the case "for

proper consideration of the step three equivalence."  *Id.*  In *Lewis v. Apfell*, the Ninth Circuit

again addressed the adequacy of an ALJ's step three consideration.  236 F.3d 503, 514 (9th Cir.

2001).  The ALJ in *Lewis* "did not discuss the combined effects of Lewis' impairments, or

compare them to any listing."  *Id.*  The Court noted that unlike the claimant in *Marcia*, however,

Lewis "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal

a listed impairment" and did not "point[] to evidence that shows that his combined impairments

---

[10] *See* Docket No. 27 at 1 ("Because Defendant's position regarding the ALJ's finding on listing equivalence rests entirely upon its arguments regarding the ALJ's credibility finding and his analysis of medical opinion evidence, Plaintiff need not revisit that issue here.")

1  equal a listed impairment." *Id.*

2      While the Court notes with displeasure the Commissioner's failure to brief this issue, the

3  Court nonetheless finds that Plaintiff's argument fails for two reasons. First, the ALJ explicitly

4  acknowledged Plaintiff's obesity,[11] its potential effects on Plaintiff, and the fact that it might

5  magnify the effects of her other impairments. A.R. 22. Second, like the plaintiff in *Lewis*,

6  Plaintiff does not offer a theory or point to evidence as to how her obesity, in combination with

7  her mental impairments, equals a listed impairment. Rather, Plaintiff's counsel parrots legal

8  standards from *Lester*, then vaguely refers to the impact of Plaintiff's obesity on "her ability to

9  ambulate as well as other bodily functions." Docket No. 20 at 8. The Court therefore rejects this

10  argument and finds that the ALJ did not err.

11          E.      RFC Assessment

12      Plaintiff makes two arguments regarding the ALJ's RFC assessment. Both fail. First,

13  Plaintiff submits that the ALJ's RFC assessment is premised on a flawed credibility

14  determination and improper weighting of expert medical opinion testimony. *See* Docket No. 20

15  at 22. As noted above, substantial evidence supports the ALJ's credibility determination and

16  weighting of medical opinion testimony. Second, Plaintiff contends that the ALJ's description of

17  her limitations in a RFC hypothetical was inadequate. *See id.* at 21-22. The Commissioner did

18  not respond to this argument. *See* Docket No. 25. The Court does not condone the

19  Commissioner's failure to thoroughly brief the issues. Nonetheless, the Court rejects this second

20  contention because Plaintiff provides no controlling authority to support it. *See* Docket No. 20 at

21  22; *see also* LR 7-2(d).

22  **IV.    CONCLUSION**

23      Judicial review of the Commissioner's decision to deny disability benefits is limited to

24  determining whether the decision is free from legal error and supported by substantial evidence.

25  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the

26

27  _____

28      [11]The Court declines to discuss physical impairments other than obesity because obesity is
the only specific physical impairment that Plaintiff's briefing references. *See* Docket No. 20 at 8.

record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is free from legal error and supported by substantial evidence under 42 U.S.C. § 405(g).

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket No. 19) be **DENIED** and that Defendant's Cross-Motion to Affirm (Docket No. 26) be **GRANTED**.

IT IS SO ORDERED.

DATED:    September 21, 2016

_____
NANCY J. KOPPE
United States Magistrate Judge

## **NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.**  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).